IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


MELODY A. BAUCOM,                    )
                                     )
        Plaintiff,                   )
                                     )
        v.                           )        1:06CV00209
                                     )
CABARRUS EYE CENTER, P.A.,           )
                                     )
        Defendant.                   )


                    MEMORANDUM OPINION and ORDER


OSTEEN, District Judge


        Plaintiff Melody A. Baucom ("Plaintiff") filed this action

against Defendant Cabarrus Eye Center, P.A. ("Defendant")

alleging violations of the Family and Medical Leave Act of 1993

(the "FMLA" or the "Act"), 29 U.S.C. §§ 2601 et seq., and North

Carolina law.  This matter is before the court on Defendant's

amended motion to dismiss and strike Plaintiff's amended

complaint.  For the reasons stated below, the court will grant

the motion in part and deny it in part.

**I.    FACTUAL BACKGROUND**

        The facts are presented in the light most favorable to

Plaintiff, and the allegations in Plaintiff's amended complaint

are taken as true for the purpose of ruling on Defendant's

motion.[1]  In July 2002, Plaintiff began employment for Defendant at its Concord, North Carolina, facility.  Plaintiff's direct supervisor was Joel Bodder who reported to Administrator Clayton Bonnett.  In December 2004, Plaintiff made several requests for FMLA leave due to her pregnancy.  Although Defendant denied those requests, Plaintiff took qualified FMLA leave for approximately ten weeks beginning in January 2005 for child birth and recovery.

In April 2005, Plaintiff learned from her physician that she would need to be absent from work intermittently for medical examination and testing in connection with a serious health condition.  Over the next month, Plaintiff sought and was denied intermittent FMLA leave for her health condition.  On April 26, 2005, Plaintiff received a memorandum from Clayton Bonnett reflecting Defendant's then-applicable FMLA policy and informing Plaintiff that she would not be eligible for FMLA leave again until January 3, 2006.  In May 2005, Mr. Bonnett advised Plaintiff that Defendant's employees could take FMLA leave for only one FMLA-eligible condition per year regardless of how much qualified FMLA leave the employee had remaining and that Plaintiff could not use her remaining FMLA leave for her health condition.

---

[1] In considering a motion to dismiss, the court must construe the facts in the light most favorable to Plaintiff and accept all well-pleaded allegations as true.  See Jenkins v. McKeithen, 395 U.S. 411, 421-22, 89 S. Ct. 1843, 1849 (1969) (citations omitted); Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994) (citation omitted).

On May 16, 2005, Plaintiff informed Defendant that she needed to take FMLA leave the next day for a medical examination relating to her serious health condition. Defendant's agents and employees told her that if she went to the examination, she would be fired. Plaintiff attended the examination, and Defendant terminated her the same day. At the time of Plaintiff's termination, she had 64 hours of qualified FMLA leave remaining for the year.

In April 2005, Plaintiff applied for Defendant's surgery center coordinator position. Plaintiff claims that due to her requests for and use of FMLA leave, Defendant refused to interview or even consider Plaintiff for the position. In both terminating Plaintiff and refusing to consider her for surgery center coordinator, Plaintiff claims Defendant violated the FMLA and North Carolina law, causing Plaintiff to suffer damages including lost wages, benefits, great emotional distress, pain, suffering, and mental anguish.

## II. PROCEDURAL HISTORY

In lieu of filing an answer to Plaintiff's complaint, Defendant moved to dismiss and strike the complaint. Before the court ruled on Defendant's motion, Plaintiff filed an amended complaint, as permitted by Federal Rule of Civil Procedure 15(a). The amended complaint rendered Defendant's motion moot, and the court denied the motion as such. (See Mem. Op. and Order of September 1, 2006.) Defendant has since filed an amended motion

3

to dismiss and strike, and that motion is currently before the court.

## III. STANDARDS OF REVIEW

A. Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a challenged pleading, but it does not resolve disputes surrounding the facts or the merits of a claim. <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992). A court must determine only if the pleading at issue fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The key issue is not whether the plaintiff will prevail on his claim, but whether he is entitled to offer evidence in support of the claim. <u>Revene v. Charles County Comm'rs</u>, 882 F.2d 870, 872 (4th Cir. 1989). A court should dismiss a case on Rule 12(b)(6) grounds "only in very limited circumstances," <u>Rogers v. Jefferson-Pilot Life Ins. Co.</u>, 883 F.2d 324, 325 (4th Cir. 1989), specifically, only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957). In determining whether to dismiss under Rule 12(b)(6), the pleading must be liberally construed in the light most favorable to the non-moving party, and the allegations made therein must be taken as true. <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421-22, 89 S. Ct. 1843, 1849 (1969).

4

B. Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure empowers the court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A Rule 12(f) motion to strike functions to dispense with unnecessary or irrelevant issues before trial rather than wasting resources to litigate those issues. Buser v. S. Food Serv., Inc., 73 F. Supp. 2d 556, 559 (M.D.N.C. 1999). Nevertheless, motions to strike "are viewed with disfavor and are infrequently granted." Id. (quoting Lunsford v. United States, 570 F.2d 221, 229 (8th Cir. 1977)). "[A] motion to strike on the basis of irrelevancy should only be granted when it is clear that the material in question can have no possible bearing upon the subject matter of the litigation and the material may prejudice the other party." Simaan, Inc. v. BP Prods. N. Am., Inc., 395 F. Supp. 2d 271, 278 (M.D.N.C. 2005) (citation omitted). Matters outside the pleadings are not considered. Microsoft Corp. v. Computer Support Servs. of Carolina, Inc., 123 F. Supp. 2d 945, 950 (W.D.N.C. 2000).

IV. **ANALYSIS**

In her amended complaint, Plaintiff enumerates four causes of action: (1) termination in violation of the FMLA, (2) negligent infliction of emotional distress, (3) wrongful discharge in violation of public policy, and (4) unlawful retaliation in violation of the FMLA. Plaintiff also requests

5

punitive damages in her prayer for relief. The court will consider the legal and factual sufficiency of each of these claims.

A. Violations of the Family and Medical Leave Act

The FMLA was enacted in part to entitle employees to reasonable leave for medical purposes, childbirth, and for the care of family members with serious health conditions. 29 U.S.C. § 2601(b)(2) (2007). The Act requires employers to allow eligible employees twelve work weeks of leave per year for one or more of the above reasons, and such leave may be intermittent only when medically necessary. § 2612(a) & (b). The Act also provides that an employee who takes such leave be restored to her former position or an equivalent position once she returns to work. § 2614(a)(1). The FMLA makes it unlawful for an employer to restrict or deny the exercise or attempted exercise of any right under the FMLA and to discharge or otherwise discriminate against an employee for opposing practices prohibited by the FMLA. § 2615(a)(1) & (2). An employer who violates section 2615 is liable for damages equal to lost wages, salary, employee benefits, or other compensation; actual monetary loss if no lost wages; interest; and liquidated damages equal to the sum of the above amounts. § 2617(a)(1)(A). The employer is also liable for appropriate equitable relief such as reinstatement or promotion. § 2617(a)(1)(B).

6

Plaintiff's amended complaint sets forth two claims for violations of the FMLA. First, Plaintiff claims she had a serious health condition and that she requested intermittent FMLA leave from Defendant for medical appointments related to that condition. Plaintiff alleges Defendant denied her requests and then terminated Plaintiff for taking qualified FMLA leave when she had 64 hours of FMLA leave remaining for the year. Second, Plaintiff claims Defendant refused to consider or hire her for the position of surgery center coordinator because she requested and took FMLA leave, constituting retaliation in violation of the FMLA, § 2615(a)(1) & (2). Plaintiff alleges that Defendant's actions caused her damages including lost wages, salary, and employment benefits. Based on these allegations, Plaintiff has stated claims for termination and retaliation in violation of the FMLA sufficient to withstand Defendant's motion to dismiss.

Defendant argues that Plaintiff's FMLA claims should be dismissed or stricken because in addition to economic damages, the claims seek punitive and non-economic compensatory damages which are not recoverable under the FMLA. Plaintiff's amended complaint states that Defendant's FMLA violations were "willful, intentional and in reckless disregard for Plaintiff [sic] legally protected rights" (Am. Compl. ¶¶ 30, 48), and that they caused her damages including "great emotional distress, mental pain, suffering, stress, grief, worry and mental anguish" (Am. Compl. ¶¶ 31, 47). It is well settled that "the cause of action under

the FMLA is a restricted one": recovery is limited to the remedies enumerated in section 2617. <u>Nev. Dep't of Human Res. v. Hibbs</u>, 538 U.S. 721, 739-40, 123 S. Ct. 1972, 1984 (2003); <u>Settle v. S.W. Rodgers Co.</u>, 998 F. Supp. 657, 666 (E.D. Va. 1998), <u>aff'd</u>, 182 F.3d 909 (4th Cir. 1999). A plaintiff cannot recover punitive damages or non-economic compensatory damages such as emotional distress, pain and suffering, physical injury, damaged reputation, or humiliation for a FMLA violation. <u>E.g.</u>, <u>Johnson v. United States Postal Serv.</u>, No. 99-0170, 2001 U.S. Dist. LEXIS 12594, at *6 (M.D.N.C. June 19, 2001); <u>Settle</u>, 998 F. Supp. at 666; <u>see</u> <u>Montgomery v. Maryland</u>, 72 Fed. Appx. 17, 19 (4th Cir. 2003); <u>Lufkin v. E. Me. Med. Ctr.</u>, 401 F. Supp. 2d 145, 145-46 (D. Me. 2005). Courts have suggested that the reason for this is two-fold. First, the Act expressly provides for the damages a plaintiff can recover, specifically monetary losses and certain liquidated damages. Therefore, because not enumerated, punitive and non-economic compensatory damages are not recoverable. <u>See Brumbalough v. Camelot Care Ctrs., Inc.</u>, 427 F.3d 996, 1007 (6th Cir. 2005); <u>Lufkin</u>, 401 F. Supp. 2d at 145-46; <u>Settle</u>, 998 F. Supp. at 666. In addition, the presence of a liquidated damages provision indicates that Congress inserted that section instead of allowing recovery of punitive damages. <u>Keene v. Rinaldi</u>, 127 F. Supp. 2d 770, 772 (M.D.N.C. 2000), <u>aff'd</u>, 127 F. Supp. 2d 770 (M.D.N.C. 2000). Whatever the reason, courts are in agreement that a plaintiff cannot recover such damages for a FMLA

8

violation. Therefore, to the extent Plaintiff seeks punitive and non-economic compensatory damages pursuant to the FMLA, those damages are not recoverable.

Plaintiff explains that she references emotional distress damages in her FMLA claims because her termination is both a FMLA violation and a common law violation, and she seeks those damages pursuant to her common law negligent infliction of emotional distress and wrongful discharge claims. Therefore, Plaintiff argues, she must allege that her termination in violation of the FMLA caused the non-economic damages. However, Plaintiff already states that Defendant's alleged FMLA violations caused her non-economic damages both in Plaintiff's statement of claim that precedes her four individual claims and again within each of her common law claims. Plaintiff also requests non-economic compensatory damages in her prayer for relief. These three references are sufficient to state a claim for such damages as part of Plaintiff's common law claims. Any mention of non-economic compensatory damages as part of Plaintiff's FMLA claims is entirely irrelevant to those claims and should be stricken pursuant to Rule 12(f). Therefore, the court will grant Defendant's motion to strike the portions of paragraphs 31 and 47 of Plaintiff's complaint that allege emotional distress and other non-economic compensatory damages as part of Plaintiff's FMLA claims.

9

Plaintiff further argues that the "willful, intentional and in reckless disregard" language in the amended complaint is not a claim for punitive damages, but rather, it serves to allege facts sufficient to state claims for willful violations of the FMLA. It is well settled that "to establish a willful violation of the FMLA, a plaintiff must show that 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" E.g., Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 33 (1st Cir. 2003) (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S. Ct. 1677, 1681 (1988)); Ricco v. Potter, 377 F.3d 599, 602-03 (6th Cir. 2004); see Settle, 998 F. Supp. at 663 (citation omitted) (stating that the willfulness standard in the Fair Labor Standards Act applies equally to the FMLA). Furthermore, the FMLA allows recovery of liquidated damages unless an employer "proves . . . that the act or omission which violated section [2615] was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation . . . ." 29 U.S.C. § 2617 (a)(1)(A)(iii) (2007). In that event, the court has the discretion to limit recovery to monetary loss. Id.

In light of controlling authority, rather than requesting punitive damages, the debated language in Plaintiff's FMLA claims alleges that Defendant's FMLA violations were willful[2] and

---

[2] It is unclear to the court why Plaintiff would state
(continued...)

supports an award of liquidated damages. Coupled with Plaintiff's other allegations, with the exception of the non-economic damages, the court finds that Plaintiff has properly stated claims for willful violations of the FMLA. Therefore, the court will deny Defendant's motion to strike and dismiss Plaintiff's FMLA claims and the "willful, intentional and in reckless disregard" language in the statement of those claims.

B. Negligent Infliction of Emotional Distress

In addition to her FMLA claims, Plaintiff attempts to state a claim for negligent infliction of emotional distress ("NIED") allegedly caused by Defendant's breach of its duty to abide by the FMLA. NIED is a state law claim, so North Carolina law applies. In North Carolina, to state a cause of action for NIED, "a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . ., and (3) the conduct did in fact cause the plaintiff severe emotional distress." McAllister v. Khei Sem Ha, 347 N.C. 638, 645, 496 S.E.2d 577, 582-83 (1998) (quoting Johnson v. Ruark

---

[2](...continued)
claims for willful violations of the FMLA. The only mention of a willful violation in the FMLA is that it extends the statute of limitations from two years to three years, 29 U.S.C. § 2617(c) (2007), but Plaintiff's complaint was timely filed whether or not she alleges a willful violation. Nevertheless, Plaintiff does properly state claims for willful violations, and the court will not dismiss or strike the debated language to the extent it is used to support those claims rather than as a request for punitive damages.

<u>Obstetrics & Gynecology Assocs., P.A.</u>, 327 N.C. 283, 304, 395
S.E.2d 85, 97 (1990)).  Although alleging ordinary negligence
rather than extreme and outrageous conduct is sufficient, the
plaintiff must also allege that she suffered severe emotional
distress as the foreseeable and proximate result of the
defendant's negligence.  <u>Id.</u> at 645, 496 S.E.2d at 583.  "[M]ere
temporary fright, disappointment or regret will not suffice."
<u>Id.</u> (citation omitted).  Rather, severe emotional distress is
"any emotional or mental disorder . . . which may be generally
recognized and diagnosed by professionals trained to do so."  <u>Id.</u>
(citation omitted).

Although Plaintiff argues that she set forth each element of
an NIED claim, Plaintiff's claim is not sufficient to withstand
Defendant's motion to dismiss.  First, it is not clear whether
Plaintiff alleges that she suffered severe emotional distress.
Although the amended complaint makes the conclusory statement
that Defendant's actions caused "great emotional distress,"
Plaintiff does not allege any facts or conditions from which she
suffered to support this notion.  However, the court need not
decide whether these allegations are sufficient, because
Plaintiff's NIED claim can be dismissed on other grounds.

Although a required element of an NIED claim is negligent
conduct, Defendant correctly notes that Plaintiff does not allege
facts sufficient to show that Defendant engaged in any negligent
behavior.  Instead, Plaintiff makes only the conclusory

12

allegation that Defendant was negligent in breaching its duty to abide by the FMLA. At least two Fourth Circuit courts have held that "a plaintiff must allege actual acts showing negligence by the defendant, and where the 'complaint contains merely a single, conclusory allegation that [defendant] was negligent,' a dismissal of the claim is proper." Ijames v. Murdock, No. 01-0093, 2003 U.S. Dist. LEXIS 4537, at *28 (M.D.N.C. Mar. 21, 2003) (quoting Mitchell v. Lydall, Inc., 16 F.3d 410, 1994 U.S. App. LEXIS 2177, at *9-10 (4th Cir. Feb. 10, 1994)). In each case, the court dismissed the plaintiff's NIED claim which contained merely a conclusory allegation of negligence when the complaint otherwise alleged only intentional acts by the defendant. See id. at *29; Mitchell, 1994 U.S. App. LEXIS 2177, at *9-10. Similarly, despite Plaintiff's bare allegation of negligence in her NIED claim, throughout the amended complaint, she indicates that Defendant's actions in violation of the FMLA were "intentional, malicious and with reckless indifference" (Am. Compl. ¶¶ 22, 26) and "willful, intentional and in reckless disregard for Plaintiff [sic] legally protected rights" (Am. Compl. ¶¶ 30, 48). The court agrees with the reasoning in Ijames and Mitchell and finds that Plaintiff's conclusory allegations of negligence without alleging facts showing that Defendant engaged in anything other than intentional behavior are insufficient to support a claim for NIED. Therefore, the court finds that Plaintiff's NIED claim should be dismissed.

Defendant also argues that although Plaintiff does not expressly state a claim for intentional infliction of emotional distress ("IIED"), the amended complaint appears to claim and request damages for IIED. The only part of the amended complaint that could be construed to set forth an IIED claim is the portion of Plaintiff's two FMLA claims that alleges intentional conduct by Defendant and requests emotional distress damages. However, as discussed above, the emotional distress damages request will be stricken, and the "intentional" language sets forth nothing more than claims for willful violations of the FMLA and liquidated damages. Therefore, the court does not construe Plaintiff's amended complaint to set forth a claim for IIED.

C. Wrongful Discharge

Plaintiff's final claim is a common law claim for wrongful discharge. North Carolina generally adheres to the employment-at-will doctrine, meaning that an employee without a definite term of employment may be discharged for any reason and has no claim for wrongful discharge against his employer. Coman v. Thomas Mfg. Co., 325 N.C. 172, 175, 381 S.E.2d 445, 446 (1989) (citation omitted). However, there is a limited public policy exception to the doctrine which provides that "there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy." Id. at 175, 381 S.E.2d at 447 (citation omitted). Courts define public policy as "the principle of law that holds no citizen can lawfully do that which

14

has a tendency to be injurious to the public or against the public good." Ridenhour v. IBM Corp., 132 N.C. App. 563, 568, 512 S.E.2d 774, 778 (1999) (citation omitted). There is no list of actions that meets this definition, but courts have held that "at the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes." Amos v. Oakdale Knitting Co., 331 N.C. 348, 353, 416 S.E.2d 166, 169 (1992). North Carolina courts have recognized wrongful discharge actions in violation of public policy "where the employee was discharged (1) for refusing to violate the law at the employer's request, . . . (2) for engaging in a legally protected activity, or (3) based on some activity by the employer contrary to law or public policy . . . ." Ridenhour, 132 N.C. App. at 568-69, 512 S.E.2d at 778 (citations omitted). Nevertheless, the public policy exception to the employment-at-will doctrine is a narrow one. Buser, 73 F. Supp. 2d at 565.

Based on Plaintiff's complaint, there are three potential grounds on which Plaintiff's wrongful discharge in violation of public policy claim could rest: Plaintiff was discharged (1) in violation of the public policy against disability discrimination, (2) in violation of the public policy set forth in the FMLA, or (3) for engaging in a legally protected activity.

First, Plaintiff alleges that Defendant discharged her in violation of the public policy against disability discrimination

15

found in the North Carolina Equal Employment Practices Act (the "NCEEPA"), N.C. Gen. Stat. §§ 143-422.1 et seq. The NCEEPA provides that "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination . . . on account of race, religion, color, national origin, age, sex or handicap by employers . . . ." Id. § 143-422.2. North Carolina courts have not recognized a private cause of action under the NCEEPA, but the statute's public policy statement has been used to support common law wrongful discharge claims and other statutory remedies. Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000); Mullis v. Mechs. & Farmers Bank, 994 F. Supp. 680, 687 (M.D.N.C. 1997).

In this case, Plaintiff attempts to use the disability or handicap discrimination prong of the NCEEPA public policy statement to support her common law wrongful discharge claim. The NCEEPA does not define the term "handicap," but the court looks to other North Carolina statutes to determine its meaning. See Simmons v. Chemol Corp., 137 N.C. App. 319, 322, 528 S.E.2d 368, 370 (2000). The North Carolina Persons with Disabilities Protection Act (the "NCPDPA"),[3] N.C. Gen. Stat. §§ 168A-1 et

---

[3] The North Carolina Handicapped Persons Protection Act was re-titled the North Carolina Persons with Disabilities Protection Act in 1999. Simmons, 137 N.C. App. at 322, 528 S.E.2d at 370. Throughout the text of the statute, "person with a disability" has been substituted for "handicapped person." Id.; see N.C.
(continued...)

<u>seq.</u>, strictly defines the term "[p]erson with a disability" as "any person who (i) has a physical or mental impairment which substantially limits one or more major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." § 168A-3(7a) (2006).  Despite the stringent disability definition, Plaintiff does not claim to have a disability let alone allege facts sufficient to show that she meets the definition under this or any other statute. Furthermore, Plaintiff does not claim that Defendant discriminated against her or allege facts showing Defendant discriminated against her based on any such condition.  Instead, after alleging only FMLA violations, Plaintiff conclusorily states that Defendant terminated her in violation of the public policy against disability discrimination.  Without alleging disability or discrimination on the basis of that disability, Plaintiff cannot state a sufficient claim for wrongful discharge in violation of the public policy against disability discrimination.  <u>See</u> <u>Simmons</u>, 137 N.C. App. at 322-24, 528 S.E.2d at 370-71 (granting summary judgment on wrongful discharge in violation of the public policy against disability discrimination claim because the plaintiff was unable to prove that his physical impairment was a handicap and that he was terminated based on that handicap); <u>see also</u> <u>Jarman v. Deason</u>, 173 N.C. App. 297,

---

[3](...continued)
Gen. Stat. §§ 168A-1 <u>et seq.</u>

299-300, 618 S.E.2d 776, 778 (2005) (suggesting that the court should not reject the legislature's determination of public policy by changing the requirements of the bases already specifically enumerated under the NCEEPA to find discrimination). Therefore, because Plaintiff has not made the proper allegations, her claim for wrongful discharge in violation of public policy cannot be based upon disability discrimination.

Next, Plaintiff alleges that her discharge violated the public policy set forth in the FMLA. However, federal courts applying North Carolina law have declined to hold that a FMLA violation constitutes or creates a public policy exception to the at-will-employment doctrine. See, e.g., Buser, 73 F. Supp. 2d at 566-67 ("While discharging an employee who has taken a valid leave of absence pursuant to the FMLA raises serious concerns . . ., the Court nonetheless declines to hold, in the absence of North Carolina precedent, that this rises to the level of a public policy concern to justify creating a new and distinct Coman claim."); Brewer v. Jefferson-Pilot Standard Life Ins. Co., 333 F. Supp. 2d 433, 438-39 (M.D.N.C. 2004) ("[T]his Court declines to hold that a violation of the FMLA creates a public policy exception to at-will employment."). In reaching its decision, the court in Buser appropriately noted that North Carolina courts have not held that violations of the FMLA fall

within the public policy exception.[4]  <u>See</u> <u>Buser</u>, 73 F. Supp. 2d at 566.  In deciding whether to expand the public policy exception to FMLA violations, the court considered the public interests involved.  <u>See</u> <u>id.</u> at 567 (citation omitted).  The court reasoned that because the defendants did not instruct the plaintiff to engage in illegal conduct as has been done in the other public policy exception cases, the plaintiff already had a remedy under the FMLA for the defendant's allegedly wrongful actions, and the public policy exception is narrow, expansion in this area would be better left to the North Carolina General Assembly or state courts.  <u>See</u> <u>id.</u>  The court in <u>Brewer</u> agreed with the reasoning in <u>Buser</u>, <u>see</u> <u>Brewer</u>, 333 F. Supp. 2d at 439, and other federal courts, although in unpublished opinions, have reached the same result.  <u>See, e.g.</u>, <u>Taylor v. Rose Furniture Co.</u>, No. 04-0450, 2004 U.S. Dist. LEXIS 23193, at *2 (M.D.N.C. Oct. 26, 2004) ("This court has found nothing that leads it to disagree with <u>Buser</u>.").  The court in the case at bar finds the reasoning in <u>Buser</u> persuasive and holds that without express guidance from the North Carolina courts or legislature, the court

---

    [4] The court is aware of only one North Carolina case, an unpublished opinion, that has even suggested that FMLA rights are protected as a matter of public policy, but that court did not reach the issue of whether a FMLA violation may amount to wrongful discharge in violation of public policy.  <u>See</u> <u>Garland v. Hatley</u>, No. COA04-1131, 2005 N.C. App. LEXIS 1737, at *5-10 (N.C. App. Aug. 16, 2005).

will not expand the public policy exception to the at-will-employment doctrine to cover FMLA violations.

Finally, Plaintiff suggests that Defendant terminated her for engaging in a legally protected activity, specifically exercising her rights under the FMLA. In fact, this is the only wrongful discharge argument Plaintiff pursues in her memorandum in response to Defendant's motion. Plaintiff argues that North Carolina courts have used termination for exercising one's legally protected rights as grounds for allowing a claim for wrongful discharge in violation of public policy, <u>see</u> <u>Ridenhour</u>, 132 N.C. App. at 568-69, 512 S.E.2d at 778, but Plaintiff cites no cases that apply this reasoning. In addition, the legally protected rights to which Plaintiff refers are her rights under the FMLA. Therefore, Plaintiff's argument that she was terminated for engaging in a legally protected activity is merely another way of saying that she was terminated in violation of the FMLA, and this court declines to expand the scope of the public policy exception to cover FMLA violations.

Because each of Plaintiff's grounds for wrongful discharge in violation of public policy is either insufficient to state such a claim or Plaintiff fails to allege sufficient facts to support that particular ground, her wrongful discharge claim should be dismissed.

D. Punitive and Remaining Non-Economic Compensatory Damages

The prayer for relief in Plaintiff's amended complaint includes a request for punitive damages as well as for emotional distress and other non-economic compensatory damages. In addition, Plaintiff's statement of claim includes additional references to non-economic compensatory damages. After the order accompanying this opinion is entered, Plaintiff's only remaining claims will be her two claims for violations of the FMLA. As discussed, Plaintiff is not entitled to recover punitive or non-economic compensatory damages under the FMLA. Therefore, the request for punitive damages in paragraph H of the prayer for relief and the claims for non-economic damages in paragraphs 23 and 27 of the amended complaint and paragraph E of the prayer for relief are irrelevant to Plaintiff's remaining claims and should be stricken pursuant to Rule 12(f).

## V.  CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant's motion to dismiss and strike Plaintiff's FMLA claims, including the "willful, intentional and in reckless disregard" language in paragraphs 30 and 48 of Plaintiff's Amended Complaint, is DENIED.

IT IS FURTHER ORDERED that Defendant's motion to strike the language "great emotional distress, mental pain, suffering, stress, grief, worry and mental anguish" from paragraphs 23, 27, 31, and 47 of Plaintiff's Amended Complaint is GRANTED.

21

IT IS FURTHER ORDERED that Defendant's motion to dismiss Plaintiff's claims for negligent infliction of emotional distress and wrongful discharge is GRANTED.

IT IS FURTHER ORDERED that Defendant's motion to strike Plaintiff's request for punitive damages in paragraph H of the prayer for relief in Plaintiff's Amended Complaint is GRANTED.

IT IS FURTHER ORDERED that Defendant's motion to strike Plaintiff's request for non-economic compensatory damages in paragraph E of the prayer for relief in Plaintiff's Amended Complaint is GRANTED.

This the 4th day of April 2007.

United States District Judge